USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/23/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

104 S. DIVISION ST LLC ET AL,

                        Plaintiffs,

-against-

CITY OF PEEKSKILL ET AL,

                        Defendants.

---

No. 22-CV-9009 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiffs, 104 S. Division St LLC, Avrum Chaim Lebrecht, and Shia Lebrecht, (collectively, the "Plaintiffs"), bring this action against the City of Peekskill, Thomas Leonard, and Nicholas Cecere (collectively, the "Defendants"), pursuant to 42 U.S.C. § 1983, asserting claims of "selective enforcement and discriminatory application of the law" in violation of the Fourteenth Amendment's Equal Protection Clause. Plaintiffs also assert a violation of New York's Human Rights Law. The Amended Complaint alleges that Defendant Leonard and Cecere discriminated against Plaintiffs by causing unnecessary delays to their construction project because of Plaintiffs' religious affiliation.

Pursuant to Federal Rules of Civil Procedure 12(c), Defendants move for judgment on the pleadings. (the "Motion", ECF No. 46.) For the following reasons, Defendants' Motion is GRANTED.

**FACTUAL BACKGROUND**

On February 5, 2018, Plaintiffs purchased the Riley Building (the "Riley"). (Amend. Compl. ¶ 21) The Riley is a four story, 8,000 square foot commercial building located in Peekskill's historic district. (*Id*.) At the time, the Riley was zoned for commercial use only. (*Id* at ¶ 23.) Plaintiffs obtained several variances and permits so that the building could be "mix-use"—

1

i.e., to have both commercial and residential use. (*Id* at ¶ 21). The Riley also required a substantial amount of work, which included a "full-gut renovation … demolition, framing, electric, plumbing, sprinklers, insulation, fire stopping, sheetrock, paint, tiling and fixtures." (*Id*.) Plaintiffs also obtained approval from the City's Historic Landmarks Preservation Board to make improvements to the Riley's façade, which entailed "removal/addition of new windows, addition/removal of brick wall segments, the extension of a fire escape on the top floor, a new entryway and door system on the ground level, relocated exterior drainage pipe, new Marvin windows, and new/repaired window lintels." (*Id* at ¶ 23.) The long and short of it is that Plaintiffs undertook a large construction project on the Riley that required various permits, variances, and approvals.

At the start of Plaintiffs' work on the Riley, Peekskill's Building Inspector was Jeff Roma. (*Id* at ¶ 22.) As alleged, Roma approved Plaintiffs' initial work on the Riley. (*Id* at ¶ 24). As it appears from the Amended Complaint, the project seemed to be proceeding smoothly under Roma's supervision. But on August 23, 2019, shortly before Roma retired, Defendants Cecere and Leonard took over as Peekskill's Building Inspector. (*Id* at ¶ 26.) Plaintiffs allege that this is when the project took a turn. As Plaintiffs tell it, Defendants Cecere and Leonard subjected Plaintiffs to delays, duplicative work, unwarranted stop work orders, reinspections, and further obstructions that made Plaintiffs' construction slow to a halt. Plaintiffs allege that Defendants subjected them to these delays and obstructions because they are Jewish. Plaintiffs further allege that other projects that started at the same time, or after, Plaintiffs' project had been allowed to finish unencumbered by the same delays and oversight at the hands of Defendants. Plaintiffs offer the following comparators as proof of their differential treatment:

- 16 South Division Street, across the street from the Property, started after the Plaintiffs began work yet received the necessary approvals and was rented out by July of 2022;

- 216 South Division Street, with 22 units and 27,000 square feet in size, received construction approval in July of 2021 and was completed in April of 2023;

- 645 Main Street, with 82 units, received construction approval in September of 2020 and was completed in September of 2023;

- 100 North Division Street, with 20 apartments and commercial property, comprising some 27,000 square feet, both started after and finished long before Plaintiffs' project; and

- 101 South Division, the gut renovation of a coffee house, was completed at the end of 2023 within a matter of weeks.

(*Id* at ¶ 102-106.)

## PROCEDURAL HISTORY

On October 22, 2022, Plaintiffs filed the original Complaint. (ECF No. 1.) On February 7, 2024, Plaintiffs filed an Amended Complaint. (ECF No. 41.) The Amended Complaint is the operative complaint. Defendants filed this Motion on May 21, 2024. (ECF No. 46), as well as a memorandum of law ("Def.'s MoL.", ECF No. 49) and reply (ECF No. 50), in support thereof. On May 8, 2024, Plaintiffs filed an opposition to Def.'s MoL. (ECF No. 45.)

## LEGAL STANDARDS

### A. Rule 12(c) Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows for a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006). To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a plausible claim for relief. *See*

3

*Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Moreover, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555.

### B. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

Plaintiffs bring claims sounding in alleged Fourteenth Amendment violations—specifically, violations of the Equal Protection Clause. Plaintiffs claim that Defendants discriminated against them because of their religious affiliation by subjecting them to obstructions and delays that others were not. In their Motion, Defendants assert several grounds warranting dismissal of Plaintiffs' claims: (1) that the Amended Complaint is predicated upon

the allegation that Plaintiff suffered an unjustified delay in obtaining a Certificate of Occupancy but the Amended Complaint is bereft of factual details preceding the issuance of the Certificate of Occupancy; (2) the Amended Complaint contains no factual information relating to the alleged comparator projects that is demonstrative of the disparate treatment alleged; and (3) the comparator buildings are factually dissimilar from the Riley. The Court agrees that the comparators are insufficiently pled.

**Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment is a direction that all persons similarly situated should be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Selective enforcement of the law violates this direction. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Selective enforcement is when the government seeks to apply the law to one individual differently than it would to other similarly situated individuals for constitutionally impermissible reasons. Such a claim requires proof that: (1) the plaintiff, compared with others similarly situated, was treated differently; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See Brown v. City of Syracuse*, 673 F.3d 141, 151–52 (2d Cir.2012).

A subpart of the required "similarly situated" showing is that the plaintiff alleges the existence of similarly situated comparators. *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013). There is some discrepancy within the Second Circuit over the exact level of similarity needed to satisfy the "similarly situated" standard. This is so because there are two different kinds of equal protection claims: (1) "class of one" cases; and (2) selective enforcement cases. "Class of one" cases are "when plaintiffs claim that they were intentionally

treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted). Selective enforcement claims are "when plaintiffs are treated differently based on impermissible considerations such as membership in a protected class." *Id*. (citing *Tasadfoy v. Ruggiero*, 365 F.Supp.2d 542, 551 (S.D.N.Y.2005)). This case is clearly the latter, but the applicable standard is less clear. In a "class of one" case, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high" to the point that they are "prima facie identical." *See Neilson v. D'Angelis*, 409 F.3d 100, 104-105 (2d Cir.2005). The disagreement within the Circuit is whether the high standard for "class of one" claims also apply to selective enforcement claims. Some courts have held that there is little reason to treat the two classes of cases differently, while others have found that a less stringent standard—that the comparators need only be similar "in all material respects"—applies to selective enforcement cases. *See Mosdos*, 815 F. Supp. 2d at 694-695 (collecting cases and explaining disagreement within the Circuit). The "in all material respects" standard asks "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Id*. Here, the Court finds that Plaintiffs have failed to meet the less stringent "in all material respects" standard, so there is no need to analyze or decide under the higher standard.

As noted *supra*, Plaintiffs bought the Riley, which is a four story, 8,000 square foot commercial building located in Peekskill's historic district that Plaintiffs wanted to convert to "mix-use." As proof that Plaintiffs were treated differently due to their religious affiliation, Plaintiffs offer five similarly situated comparators. These include:

- 16 South Division Street, across the street from the Property, started after the Plaintiffs began work yet received the necessary approvals and was rented out by July of 2022;
- 216 South Division Street, with 22 units and 27,000 square feet in size, received construction approval in July of 2021 and was completed in April of 2023;
- 645 Main Street, with 82 units, received construction approval in September of 2020 and was completed in September of 2023;
- 100 North Division Street, with 20 apartments and commercial property, comprising some 27,000 square feet, both started after and finished long before Plaintiffs' project; and
- 101 South Division, the gut renovation of a coffee house, was completed at the end of 2023 within a matter of weeks.

With respect to the comparators, the crux of Plaintiffs' argument is that because these other projects were bigger and finished sooner, Plaintiffs' delays must have been caused by religious animus. (Amend. Compl. ¶ 102.) Though unclear, if Plaintiffs' argument is that the comparators were given favorable treatment by being allowed to continue and complete construction despite having similar violations as Plaintiff, then this argument fails. Neither a selective enforcement nor a "class of one" claim can be sustained "based merely on favorable treatment of another." *Missere v. Gross*, 826 F. Supp. 2d 542, 564 (S.D.N.Y. 2011) (citing *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F.Supp.2d 143, 158 (S.D.N.Y.2002); *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir.1999)).

If Plaintiffs' argument is that they were wrongly and unnecessarily subjected to delays and other obstructions while the comparators were not, then this argument also fails. Plaintiffs baldly assert that the comparator buildings finished first with the underlying assumption that they must have timely completed their work because they did not undergo similar delays and other

7

obstructions. But that is far from clear on the face of the Amended Complaint. To make its determination, the Court needs further factual support that the comparators were not subject to similar treatment—i.e., that they did not endure the same delays, inspections, denial of permits, requirements of further permits, violations, etc. *See In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at *7 (S.D.N.Y. Mar. 25, 2016), *aff'd sub nom. Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016) (collecting cases that claims of unfair treatment in the zoning or building context must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged including specific characteristics or traits permitting court to find similarity plausible). Plaintiffs' Amended Complaint notes applications for permits and variances related to a host of work, but the Amended Complaint does not indicate if the comparators underwent similar work such that they are ripe for comparison. Instead, the Amended Complaint merely notes that larger buildings were completed at a faster rate than Plaintiffs and then summarily concludes that the difference is religious animus. This is an insufficient basis for the Court to determine if the comparators are similarly situated to Plaintiffs.

And finally, the Amended Complaint does not contain a sufficient factual description of the comparators for the Court to determine if they are similarly situated in all material respects. For example, 16 South Division Street contains no description of the size, use, or applicable zoning requirements. 216 South Division Street contains no description of its use or applicable zoning requirements. 645 Main Street also contains no description of its use or applicable zoning requirements. 100 North Division Street also contains no description of applicable zoning requirements. 101 South Division also seems dissimilar in that it is for commercial use and not

residential or mix-use and does not mention its size or the applicable zoning requirements. The Court also notes that Plaintiffs' entire theory of discriminatory enforcement is that they were subject to selective enforcement because of their religious affiliation but there is no mention of whether the comparators were owned and operated by non-Orthodox Jews. *See Mosdos*, 815 F. Supp. 2d at 699 (noting that the Amended Complaint's mention that non-Orthodox land use developments were not challenged by the Defendants even where they would affect the same purported government interests of water, sewer, and traffic in a greater fashion, amongst other facts, allowed for a prudent person to decide that these projects were similar in all material respects). Plaintiffs fail to provide the Court with enough of a factual basis to determine if the comparators are similarly situated. Accordingly, Plaintiffs have failed to sufficiently plead similarly situated individuals were treated differently than Plaintiffs in violation of the Fourteenth Amendment's Equal Protection Clause.

**New York Human Rights Law**

Because the Court has dismissed all claims over which it had original jurisdiction it declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c).

**Leave to Amend**

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Accordingly, the Court dismisses Plaintiff's claims with leave to amend.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings is GRANTED and all claims are dismissed without prejudice. Plaintiffs are granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. If Plaintiffs choose to do so, Plaintiffs will have until March 3, 2025, to file a Second Amended Complaint. The Defendants are then directed to answer or otherwise respond by March 25, 2025.

If Plaintiffs fail to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 46.

Dated: January 23, 2025  SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge