USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/8/2025___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 104 S. DIVISION ST LLC, AVRUM CHAIM LEBRECHT, and SHIA LEBRECHT,<br><br>       Plaintiffs,<br><br>   -against-<br><br>CITY OF PEEKSKILL, THOMAS LEONARD, and NICHOLAS CECERE,<br><br>       Defendants. | 7:22 CV 9009 (NSR)<br><br>**OPINION & ORDER** |

NELSON S. ROMÁN, United States District Judge:

Plaintiffs, 104 S. Division St LLC, Avrum Chaim Lebrecht, and Shia Lebrecht (collectively, "Plaintiffs"), bring this action against the City of Peekskill (the "City" or "Peekskill"), Thomas Leonard, and Nicholas Cecere (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, asserting claims of selective enforcement and discriminatory application of the law in violation of the Fourteenth Amendment's Equal Protection Clause. Plaintiffs also assert a violation of their rights under the New York State Human Rights Law, N.Y. Exec. Law § 209 *et seq.*, based on the same allegations.[1] Plaintiffs allege that Defendants Leonard and Cecere discriminated against them because of their religious affiliation by way of selective enforcement of the City's facially neutral building code requirements against Plaintiffs' property redevelopment, resulting in unnecessary delays. (*See* Second Amended Complaint ("SAC"), ECF No. 54.)

---

[1] The Court notes that Plaintiffs also allege, without elaboration, that they "were deprived of a protected liberty interest without due process of law." (SAC § 129.) Because the SAC contains no allegations that would implicate a violation of the Due Process Clause and Plaintiffs do not plead a violation of any substantive or procedural due process rights, the Court does not address Plaintiffs' due process allegation.

1

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants renewed their motion for judgment on the pleadings. ("Motion", ECF No. 56.) For the following reasons, Defendants' Motion is GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from the SAC and assumed to be true for the purpose of resolving Defendants' motion.

On February 5, 2018, Plaintiffs purchased the Riley Building in Peekskill's historic district (the "Riley" or the "Property"). (SAC § 2, 21.) At the time of purchase, the Riley was an 8,000 square foot property that was zoned for commercial use only. (*Id.* at § 21.) Plaintiffs obtained several variances and permits so that the building could be mix-use—that is, have both commercial and residential use. (*Id.*) Plaintiffs also invested in a "full-gut renovation" of the Property, which included, among other things, "demolition, framing, electric, plumbing, sprinklers, insulation, fire stopping, sheetrock, paint, tiling and fixtures." (*Id.*) Plaintiffs also obtained approval from the City's Historic Landmarks Preservation Board to make improvements to the Riley's façade, which entailed "removal/addition of new windows, addition/removal of brick wall segments, the extension of a fire escape on the top floor, a new entryway and door system on the ground level, relocated exterior drainage pipe, new Marvin windows, and new/repaired window lintels." (*Id.* at § 23.) In sum, Plaintiffs undertook a large redevelopment project to convert the Riley from a commercial building to a mix-use property, investing over $1.4 million in the construction and various permits, variances, and approvals. (*Id.* at § 21.)

When Plaintiffs purchased the Riley, Peekskill's Building Inspector was Jeff Roma. (*Id.* at § 22.) Plaintiffs allege that Roma approved Plaintiffs' "full permit submission package," which included "architectural drawings for demolition, and installation of HVAC, framing, electric,

plumbing, sprinkler systems and fire alarm protection," noting that separate permits were needed only for electric and plumbing. (*Id.* at § 24.) As it appears from the SAC, the redevelopment project seemed to be proceeding smoothly under Roma's supervision. But on August 23, 2019, shortly before Roma retired, Defendants Cecere and Leonard were hired as building inspectors for the City. (*Id.* at § 26.) Plaintiffs allege that this is when their project took a turn. As Plaintiffs tell it, Defendants Cecere and Leonard subjected Plaintiffs to delays, duplicative work, unwarranted stop orders, re-inspections, and further obstructions that made Plaintiffs' construction slow to a halt. (*See generally id.*) While Plaintiffs' SAC mentions several aspects of the redevelopment project, the crux of the delays concerned framing work that the City required Plaintiffs to perform as well as the City's permit requirements for installation of the Riley's sprinkler system. (*Id.* at §§ 33-57, 62-92.) Plaintiffs allege that Defendants subjected them to these delays and obstructions because they are Jewish. (*Id.* at § 5.) Plaintiffs further allege that other projects owned by non-Jews that began after or around the same time as Plaintiffs' project and that are "comparable in all material respects" to Plaintiffs' project were not subject to the same religious animosity and discriminatory treatment. (*Id.* at § 101.) Plaintiffs offer the following comparators as proof of their differential treatment:

- 16 South Division Street, across the street from the Property and owned by a non-Jew, is similar in size to the Property, was converted from commercial to mix-use, and underwent a full-gut renovation that included interior demolition, framing, electric, plumbing, sprinklers, insulation, fire stopping, sheetrock, paint, tiling, fixtures and façade modifications requiring Historic Preservation Board approval. The work on this project began after Plaintiffs' project had started yet received the necessary approvals and was rented out by July of 2022;

- 100 North Division Street, owned by a non-Jew, is approximately 27,000 square feet, and underwent façade restoration and improvements requiring Historic Preservation Board approval, gut demolition of several commercial spaces, and conversion of several commercial units into residential apartments. This project both started after and finished long before Plaintiffs' project;

- 216 South Division Street, owned by a non-Jew, is approximately 27,000 square feet with 22 residential units and 2,000 square feet of commercial space. This project received construction approval in July of 2021 and was completed in April of 2023;

- 645 Main Street, owned by two non-Jews, is a new construction project approximately 87,000 square feet in size that received construction approval in September of 2020 and was completed in September of 2023.

- 101 South Division, owned by a non-Jew, underwent a gut renovation into a coffee house that was completed at the end of 2023 within a matter of weeks.

(*Id.* at §§ 104-117.)

Plaintiffs further point to two newspaper articles discussing the status of various development projects in the City, both of which reported that Plaintiffs' redevelopment of the Riley had come to a halt. (*Id.* at §§ 119-126.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on October 22, 2022 with the filing of the original Complaint. (ECF No. 41.) On February 7, 2024, Plaintiffs filed an Amended Complaint. (ECF No. 21.) After full briefing on Defendants' motion for judgment on the pleadings, on January 23, 2025, the Court issued an Opinion & Order granting Defendants' motion and granting Plaintiffs leave to file a Second Amended Complaint. (ECF No. 51.) Plaintiffs filed a Second Amended Complaint

4

on March 3, 2025. ("SAC", ECF No. 54.) Defendants again moved for judgment on the pleadings and filed this Motion on March 19, 2025 (ECF No. 56) along with a memorandum of law ("Def.'s Mem. of Law", ECF No. 58) and reply ("Def.'s Reply", ECF No. 59), in support thereof. Plaintiffs filed an opposition to Defendants' Motion. ("Pl. Opp.", ECF No. 60.)

**LEGAL STANDARDS**

### A. Rule 12(c) Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). It is not necessary for the complaint to assert "detailed factual allegations," but it must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The facts in the complaint "must be enough to raise a

5

right to relief above the speculative level…on the assumption that all the allegations in the complaint are true." *Id.*

### B.  42 U.S.C. § 1983 Claims

Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

Plaintiffs bring claims sounding in alleged violations of the Equal Protection Clause of the Fourteenth Amendment. In particular, Plaintiffs claim Defendants, two of the City's building inspectors, subjected them to selective treatment of the City's facially neutral building code requirements because of their Jewish identity. In their Motion, Defendants assert the following grounds warrant dismissal of Plaintiffs' claims: (1) the comparator projects are factually dissimilar from the Riley, and (2) the SAC is bereft of factual details concerning a 23-month period preceding the issuance of the Certificate of Occupancy to support Plaintiffs' allegation that they suffered an

6

unjustified delay in obtaining said certificate. For the following reasons, the Court agrees that the comparators are insufficiently pled.

### A. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment is a direction that all persons similarly situated should be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Selective enforcement of the law—when the government seeks to apply the law to one individual differently than it would to other similarly situated individuals for constitutionally impermissible reasons—violates this direction. *See Whren v. United States, 517 U.S. 806, 813 (1996)*. To plead an equal protection claim on a theory of selective enforcement, a plaintiff must show that: (1) "the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *See Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992).

To satisfy the "similarly situated" showing, "plaintiffs must allege the existence of similarly situated comparators." *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013). There is some discrepancy within the Second Circuit over the exact level of similarity needed to satisfy the "similarly situated" standard. This is so because there are two different kinds of equal protection claims: (1) "class of one" cases; and (2) selective enforcement cases. "Class of one" cases are "when plaintiffs claim that they were intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693

(S.D.N.Y. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted). Selective enforcement claims are "when plaintiffs are treated differently based on impermissible considerations such as membership in a protected class." *Id.* (citing *Tasadfoy v. Ruggiero*, 365 F.Supp.2d 542, 551 (S.D.N.Y.2005)). This case is clearly the latter, but the applicable standard is less clear. In a "class of one" case, "the level of similarity between plaintiffs and the comparators must be extremely high" to the point that they are "prima facie identical." *See Neilson v. D'Angelis*, 409 F.3d 100, 104105 (2d Cir.2005). The disagreement within the Circuit is whether the high standard for "class of one" claims also applies to selective enforcement claims. Some courts have held that there is little reason to treat the two classes of cases differently, while others have found that a less stringent standard—that the comparators need only be similar "in all material respects"—applies to selective enforcement cases. *See Mosdos*, 815 F. Supp. 2d at 694-695 (collecting cases and explaining disagreement within the Circuit). The "in all material respects" standard asks "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Id.* Here, the Court finds that Plaintiffs have failed to meet the less stringent "in all material respects" standard, so there is no need to analyze or decide under the higher standard.

As noted *supra*, Plaintiffs bought the Riley, which is a four-story 8,000 square foot commercial building located in Peekskill's historic district that Plaintiffs wanted to convert to mix-use. As proof that they were treated differently by Defendants because of their religious affiliation, Plaintiffs offered the following five comparators that they deem to be similarly situated to the Riley:

- 16 South Division Street, across the street from the Property and owned by a non-Jew, is similar in size to the Property, was converted from commercial to mix-use, and

underwent a full-gut renovation that included interior demolition, framing, electric, plumbing, sprinklers, insulation, fire stopping, sheetrock, paint, tiling, fixtures and façade modifications requiring Historic Preservation Board approval. The work on this project began after Plaintiffs' project had started yet received the necessary approvals and was rented out by July of 2022;

- 100 North Division Street, owned by a non-Jew, is approximately 27,000 square feet, and underwent façade restoration and improvements requiring Historic Preservation Board approval, gut demolition of several commercial spaces, and conversion of several commercial units into residential apartments. This project both started after and finished long before Plaintiffs' project;

- 216 South Division Street, owned by a non-Jew, is approximately 27,000 square feet with 22 residential units and 2,000 square feet of commercial space. This project received construction approval in July of 2021 and was completed in April of 2023;

- 645 Main Street, owned by two non-Jews, is a new construction project approximately 87,000 square feet in size that received construction approval in September of 2020 and was completed in September of 2023; and

- 101 South Division, owned by a non-Jew, underwent a gut renovation into a coffee house that was completed at the end of 2023 within a matter of weeks.

As Defendants note, it is not enough for Plaintiffs to allege that the comparator projects were similar in size and use to the Riley, or that those projects began around the same time as, or after, the Riley's redevelopment yet finished more quickly. To satisfy the "in all material respects" standard in the land-use context, Plaintiffs must plead facts as to the comparators identifying the specific provisions of the City's facially neutral building code that were allegedly enforced in a

9

discriminatory manner. In other words, "Plaintiffs must allege facts sufficient to support plausible comparisons relevant to their allegations of selective enforcement concerning: (i) the framing repairs they were required to perform, and (ii) the separate permit they were required to obtain to install their fire sprinkler system." (Def.'s Mem. of Law at 14-15.) Courts in this circuit have consistently required such detailed comparator allegations. *See 20 Dogwood LLC v. Village of Roslyn Harbor*, No. 22-CV-4047, 2023 WL 3571239, at *4 (E.D.N.Y. May 19, 2023) (granting defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because plaintiffs' "selective enforcement theory [was] missing a crucial allegation—that the comparators were also at least arguably in violation of town codes," noting that "plaintiffs alleging selective enforcement of town ordinance violations not only need to allege that the comparators were committing similar violations, but also need to plead facts allowing the court to infer that the *manner* and *extent* of the violations is similar.") (internal quotations omitted); *Marom v. Town of Greenburgh*, No. 18 CV 7637, 2020 WL 978514, at *8 (S.D.N.Y. Feb. 28, 2020) (finding that plaintiff's equal protection claim fails because plaintiff failed to allege whether the conditions on the comparator properties were "similar in magnitude or scope, or whether it violated the same provision of the building code").

Here, Plaintiffs claim that the City treated the Riley differently regarding both the remedial framing work it required and the permitting process for the sprinkler system installation—each of which, according to the SAC, involved building code compliance. However, the SAC contains no allegations indicating whether the five purported comparator projects faced the same building code violations, performed the same types of work, or how the City addressed those issues in those cases.

First, as a general matter, two of the five alleged comparator projects, 216 South Division Street and 645 Main Street, were new construction projects, with the latter being entirely residential. (SAC §§ 111-115.) By contrast, the Riley involved the redevelopment of a commercial building in the City's historic zoning district for mix-use. (*Id.* § 21.) As stated by Defendants, "[b]y any measure, new construction is not comparable to redevelopment of a historic building." (Def.'s Mem. of Law at 18-19.) For example, a new construction project would not require remedial framing work as the Riley did; therefore, these two comparator projects are not "similarly situated" to the Riley "in all material respects." *See Mosdos*, 815 F. Supp. 2d at 694-695.

The remaining three comparators also fail to meet the pleading requirements for an Equal Protection claim based on selective enforcement. Although Plaintiffs point out that 16 South Division Street and 100 North Division Street also involved redeveloping commercial buildings in the City's historic zoning district for mixed-use purposes, they provide no factual allegations about inspections or code compliance issues at those sites. In other words, Plaintiffs again do not allege whether these projects violated the same building code provisions the Riley did, involved similar types of work, or how the City handled any such issues. That these projects were similar in size—or even larger—than the Riley, and that they began later or finished earlier, does not render them comparable in all material respects if the alleged causes of delay at the Riley— building code violations relating to framing and fire-sprinkler installation—were not also present at those sites. Without such allegations, the Court cannot reasonably infer that the comparator projects were completed more quickly because their owners are non-Jewish, or, conversely, that Plaintiffs' project was delayed because they are Jewish. *See Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 156 (E.D.N.Y. 2017) (dismissing selective enforcement claim where plaintiffs failed to "plead facts allowing the court to infer that the *manner* and *extent* of the violations [was]

11

similar"). For example, it is reasonable to conclude that if the comparator projects did not have to address the building code violations the Riley did, or any violations at all, those projects would have been completed sooner—despite being larger or having commenced after the Riley—for reasons entirely unrelated to religious animus. Lastly, the gut renovation of 101 South Division into a coffee house is patently dissimilar to Plaintiffs' redevelopment of the Riley and, therefore, could not possibly be a comparator project that is similar to the Riley in all material respects.

Plaintiffs contend that the five comparators they identify are "directly comparable" to the Riley "in all material respects" because each involved "the same type of conversion (commercial to mixed use); was subject to identical zoning regulations; required historic preservation approval; and underwent full-gut renovations that included interior demolition, framing, electric, plumbing, sprinklers, insulation, fire stopping, sheetrock, paint, tiling, fixtures, and façade modifications." (SAC § 102.) But as Defendants correctly observe, this assertion is conclusory. (Def.'s Mem. of Law at 9.) As a matter of law, every newly constructed or renovated dwelling in New York must include framing, electrical and plumbing work, insulation, fire stopping, and similar elements to obtain a Certificate of Occupancy under the New York State Uniform Fire Prevention and Building Code. *See generally* N.Y. Exec. Law § 371; N.Y. Energy Law § 11-104 (McKinney). If such routine construction features were enough to establish comparators, then virtually any properly executed redevelopment project would qualify. In any event, these alleged similarities still do not address whether the comparator projects encountered the same or similar code violations as the Riley did or how the City responded to those issues.

Plaintiffs also reference two newspaper articles discussing the status of various development projects in the City, which noted that the Riley redevelopment had stalled; however,

these allegations likewise provide no factual information about the five comparator projects. (SAC §§ 119–126.)

Accordingly, Plaintiffs have failed to plead similarly situated comparators to support an Equal Protection claim on the basis of religious animus under the selective enforcement theory. While the Court acknowledges that the Parties' relationship has been strained from the start—and that it is possible Defendants may just be difficult to work with—and that Plaintiffs' SAC included more details on the comparators than did their Amended Complaint, Plaintiffs still have not alleged sufficient facts for the Court to plausibly conclude or reasonably infer that the delays they encountered were caused by Defendants' religious animus and not by, for example, the need to address several compliance issues with respect to the City's building code requirements. *See Santucci v. Levine,* No. 17-CV-10204 (PMH), 2021 WL 76337, at *5 (S.D.N.Y. Jan. 8, 2021), *aff'd,* 2022 WL 121281 (2d Cir. Jan. 13, 2022) (dismissing the amended complaint because, while it was "more robust than its predecessor," it still lacked factual allegations as to how the same zoning ordinances had been enforced against the comparators).

Finally, because the Court finds that the comparators are insufficiently pled, there is no need for the Court to address Defendants' argument concerning an unexplained temporal gap immediately preceding the issuance of a Certificate of Occupancy.

**B.  New York Human Rights Law Claim**

Plaintiffs also allege a violation of their rights pursuant to the New York State Human Rights Law based upon the same underlying allegations. Because the Court has dismissed all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c).

13

14

## CONCLUSION

For the foregoing reasons, Defendants' renewed Motion for judgment on the pleadings is GRANTED. Because Plaintiffs have filed a total of three pleadings, including two amended complaints, all federal claims are deemed dismissed with prejudice. Plaintiffs' state court claims are deemed dismissed without prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 56 and to terminate this action.

Dated: December 08, 2025
White Plains, New York

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE